IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| UNITED STATES OF AMERICA | ) | CR. NO.: 8:21-495 |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **THE GOVERNMENT'S** |
| JARVIS MIKEL JACKSON | ) | **SENTENCING MEMORANDUM** |

COMES NOW the United States of America, by and through the undersigned counsel, and respectfully submits this Sentencing Memorandum. For the reasons set forth in this Memorandum, at Jackson's resentencing, the Court should impose the same 115-month prison sentence as an alternate upward variant sentence. In the alternative, the Court should impose the same 115-month prison sentence because Jackson's South Carolina convictions for distribution of cocaine base are still valid predicates for an enhanced base offense level in light of *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023).

A.  **Background**

On November 2, 2021, the defendant pleaded guilty to being a felon in possession of a firearm and ammunition. ECF No. 35. The Presentence Investigation Report dated February 1, 2022 (PSR) imposed a base offense level of 26 because the firearm was capable of accepting a high-capacity magazine and Jackson committed his offense after sustaining two felony convictions for controlled substance offenses: a 2008 South Carolina conviction for distribution of crack cocaine and two convictions in 2011 for distribution of crack cocaine – first offense.[1] PSR, ¶ 44.

To the offense level of 26, the PSR added two levels for recklessly creating a substantial risk of death or serious bodily injury while fleeing from law enforcement, PSR, ¶ 48, and credited

---

[1] The two convictions in 2011 for distribution of crack cocaine are one combined predicate offense pursuant to U.S.S.G. § 2K2.1. PSR, ¶ 23.

1

Jackson three levels for his acceptance of responsibility. PSR, ¶¶ 51-52. Using the total offense level of 25 and a criminal history category VI, and the statutorily authorized maximum sentence of 10 years, the PSR calculated the Guidelines imprisonment range to be 110 to 120 months. PSR, ¶¶ 71-72.

Jackson filed an objection to the PSR. ECF No. 45. He contended his prior South Carolina drug convictions were not controlled substance offenses. *Id.* Jackson argued the South Carolina statute for distribution of crack cocaine (S.C. Code § 44-53-375(B)) mirrored the West Virginia statute examined in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), which the Court found was not a controlled substance offense, and therefore, the use of Jackson's prior South Carolina drug convictions described above was prohibited. *Id*. The Government opposed Jackson's objections and argued his prior convictions for distribution of cocaine base were valid predicates for an enhanced base offense level pursuant to U.S.S.G. § 2K2.1. ECF No. 42.

The case was called for sentencing in February 2022. The Court addressed Jackson's objections to his South Carolina distribution convictions being considered predicate controlled substance offenses. ECF No. 58 (Transcript of Sentencing Hearing) at pgs. 4-5. The Court noted the issue was briefed for the Court, agreed with the Government's position that Jackson's prior South Carolina drug convictions were controlled substance offenses, and denied the objection. *Id.* The Court imposed a sentence of imprisonment for a term of 115 months, supervised release for a term of 3 years, and payment of the special assessment of $100.00. ECF No. 47. The Court further noted it would have imposed this same sentence as an alternate variant sentence in light of 18 U.S.C. § 3553 factors and in light of the totality of the circumstances. ECF No. 58 at pgs. 7-8.

Jackson timely appealed the 115-month prison sentence imposed by this Court. ECF No. 51. On April 10, 2023, the Fourth Circuit Court of Appeals, without oral argument, issued an

unpublished decision vacating Jackson's sentence and remanding to this court for resentencing. *United States v. Jackson*, 2023 WL 2852624 (4th Cir. 2023).

  **B.** **At Jackson's resentencing, this Court should impose the same 115-month prison sentence as an alternate variant sentence after considering the factors in 18 U.S.C. § 3553(a).**

  This Court noted at Jackson's sentencing hearing that "if . . . it is determined that I have not calculated this – these provisions correctly, I will for – for the record that I would have imposed this same sentence as an alternate variant sentence in light of 18 U.S.C., Section 3553 factors and in light of the totality of the circumstances." ECF No. 58 (Transcript of Sentencing Hearing), at pg. 8. However, the Fourth Circuit Court of Appeals determined this Court "didn't provide any individualized analysis that would justify an effective 37-month upward variance." *Jackson*, 2023 WL 2852624 at *6.

  Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). Taken together, the statutory sentencing factors support imposing an alternate upward variant sentence of 115 months' imprisonment.

The Nature and Circumstances of the Offense

  In February 2019, officers with the Greenwood, South Carolina, Police Department observed Jackson standing near a street corner in Greenwood, South Carolina. PSR, ¶ 7. Officers believed Jackson had an active outstanding arrest warrant and confirmed the warrant was active. *Id*. As officers approached Jackson, he became belligerent. *Id*. As officers grasped Jackson's coat sleeves and informed him of the outstanding arrest warrant, Jackson struggled with officers and attempted to flee on foot. *Id*. During the struggle with officers, his coat jacket came off, but officers managed to stop Jackson from escaping as he continued to pull away. PSR, ¶ 8. A firearm fell from Jackson's waistband area as he struggled with officers and attempted to flee. PSR, ¶ 8.

3

Jackson ignored officers' commands to place his hands behind his back and continued to try to break free from officers. *Id*. Officers placed Jackson on the ground and eventually handcuffed him with his hands behind his back. *Id.*

Jackson's behavior during his arrest created a substantial risk of harm and injury to law enforcement as he struggled with officers and attempted to flee while armed with a loaded firearm. PSR, ¶ 48. Based on his behavior and actions while officers arrested him on the outstanding warrant, Jackson received a 2-level enhancement for recklessly creating a substantial risk of death or serious bodily injury while fleeing from law enforcement. *Id*.

<u>The History and Characteristics of the Defendant</u>

Jackson, who is currently 33 years old, was born and raised in Greenwood, South Carolina. PSR, ¶ 54. He was not abused during his childhood and completed the tenth grade in high school. PSR, at ¶¶ 54, 63. He is the father of four children with his fiancé, Sheneka Sayles, and his children range in age from approximately 14 to 6. PSR, ¶ 56. According to Jackson, he has never been court ordered to pay child support for his children. *Id*. Jackson reports a history of high blood pressure for which he was treated by the South Carolina Department of Corrections (SCDC) and for which he takes prescription medication. PSR, ¶ 59. Jackson describes his overall mental health as "good" and denies any treatment by a psychiatrist or any other mental health professional. PSR, ¶ 60.

While he reports an "good overall childhood," PSR, ¶ 54, he turned to a life of crime early in his life when he was approximately 17 years old. Periods of interruption in Jackson's criminal activity occurred mainly while he was incarcerated. His prior convictions include:

4

| Date of Arrest | Date Sentence Imposed | Age at Sentencing | Offense of Conviction |
|---|---|---|---|
| February 2007 | October 2007 | 17 | Grandy larceny |
| April 2007 | October 2007 | 17 | Assault and battery – high and aggravated nature |
| October 2007 | October 2007 | 17 | Malicious injury to personal property |
| December 2007 | January 2008 | 17 | Failure to stop on lawful command |
| February 2008 | May 2008 | 18 | Distribution of crack |
| *From approximately June 2008 to July 2010, Defendant was incarcerated.* | | | |
| November 2010 | June 2011 | 21 | Distribution of crack – first offense (two offenses) |
| April 2012 | April 2012 | 22 | Drugs/manufacture/distribution, etc. cocaine base |
| *From approximately June 2011 to December 2017, Defendant was incarcerated. In December 2017, Defendant was released to supervised re-entry. His sentence expired in approximately June 2018.* | | | |
| February 2019 | April 2019 | 29 | Resisting arrest |
| June 2019 | September 2019 | 29 | Operating motor vehicle without a license |
| March 2020 | May 2021 | 31 | Assault and battery – second degree |
| *Beginning in June 2021, Defendant was incarcerated. He has remained in custody since that time.* | | | |

PSR, ¶¶ 18-27. Jackson also has a state charge for assault and battery – high and aggravated nature, which is pending in Greenwood, South Carolina. He was arrested for this offense in December 2019 . PSR, ¶ 39. Jackson's prior convictions designate him as a criminal history category VI –

the highest category in the federal system. The PSR also reflects a probation violation and revocation in May 2008 for technical violations. PSR, ¶¶ 18, 19.

<u>The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public from Further Crimes of the Defendant</u>

The seriousness of Jackson's crime for possessing a firearm and ammunition while prohibited from doing so speaks for itself. Jackson sustained not one, but several, prior felony convictions punishable by a term of imprisonment of more than one year which prohibited him from possessing a firearm and/or ammunition. Jackson was well aware of the prohibition against him possessing a firearm and/or ammunition. A sentence of 115 months' imprisonment for Jackson's conviction adequately reflects the seriousness of the offense.

Jackson's criminal history and the instant conviction demonstrate he has virtually no respect for the law. Despite being relatively young (31 years old at the time he was convicted by this Court), Jackson has already engaged in significant criminal activity. His prior periods of incarceration in the SCDC for other offenses have not deterred him from continuing to engage in criminal conduct. A sentence of 115 months' imprisonment for this offense will promote respect for the law, provide just punishment, and provide adequate deterrence to Jackson and others who might consider possessing a firearm and ammunition while prohibited from doing so.

Perhaps most importantly, a sentence of 115 months' imprisonment will protect the public from further crimes of Jackson by ensuring that he spends a significant amount of time incarcerated. Jackson has engaged in significant criminal conduct in and around the Greenwood community throughout his life. He has introduced drugs into the community as demonstrated by his numerous drug distribution convictions. PSR, ¶ 22, 23, 24. He has engaged in violent behavior

as demonstrated by his charge for attempted murder and conviction of the lesser included offense of assault and battery second degree. PSR, ¶ 27.

## The Kinds of Sentences Available and Guideline Sentencing Range

The statutory maximum term of imprisonment for felon in possession of a firearm and/or ammunition is 10 years. PSR, ¶ 71.

If Jackson's prior controlled substances offenses are valid predicates for an enhanced base offense level, then the total offense level is 25, with a criminal history category VI, resulting in a Guideline range of imprisonment of 110 to 137 months. Since the statutory maximum sentence is 10 years, which is less than the maximum of the Guideline range, then the Guideline range is 110 to 120 months pursuant to U.S.S.G. § 5G1.1(c)(1). PSR, ¶ 72.

If Jackson's prior controlled substance offenses are not valid predicates for an enhanced base offense level, then the total offense level is 19, with a criminal history category VI, resulting in a Guideline range of imprisonment of 63-78 months. Under this scenario, the difference between the maximum range of imprisonment under the Guidelines and the previously imposed 115-month term of imprisonment is 37 months.

## The Need to Avoid Unwarranted Sentence Disparities

A sentence of 115 months' imprisonment for felon in possession of a firearm would not create an "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). There are no codefendants in this case, and this sentence would not create unwarranted disparities among other defendants. This sentence also falls under the statutory maximum sentence for this offense (10 years).

On the other hand, imposing a sentence that does *not* account for Jackson's prior controlled substance offenses would result in a significant disparity with other similarly situated defendants

7

in the District of South Carolina. Just four days after the Fourth Circuit decided in an unpublished opinion that Jackson's South Carolina distribution convictions are inchoate crimes and therefore not controlled substance offenses under the Guidelines, the Fourth Circuit issued a published opinion in *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023), which rejected the rationale the panel in *Jackson* used to disqualify Jackson's South Carolina distribution convictions. As explained below, *Groves* makes clear that *Jackson* was incorrectly decided and that South Carolina distribution offenses *are* Guidelines predicates.[2]

Moreover, even assuming *Jackson* was correctly decided and South Carolina distribution is an inchoate offense, the Sentencing Commission has proposed an amendment to the Guidelines that will expressly include attempt offenses. *See Amendments to the Sentencing Guidelines (Preliminary)* at 8 (in Proposed Amendment to § 4B1.2), United States Sentencing Commission (Apr. 5, 2023)[3] ("The terms 'crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, attempting to commit, or conspiring to commit any such offense."). So by November 2023, South Carolina distribution offenses will once again definitively be controlled substance offenses under the Guidelines. To impose a sentence that does not take into account the seriousness of Jackson's distribution offenses will allow him to benefit from a windfall that similarly situated defendants in the District of South Carolina have not received before him and will not receive after him. The Government respectfully submits that 115 months is the appropriate sentence under the § 3553(a) factors irrespective of the Guidelines range.

---

[2] The Fourth Circuit heard oral argument on this question on March 7, 2023, in *United States v. Davis*, No. 20-4433. An opinion has not yet issued.
[3] https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf.

**C. In the alternative, Jackson's prior offenses convictions for distribution of cocaine base are still valid predicates for an enhanced base offense level even after the Fourth Circuit's decision in this case.**

Notwithstanding the law-of-the-case doctrine, the Court should find that Jackson's prior convictions for distribution of cocaine base are controlled substance offenses under the Sentencing Guidelines. Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999). But there are important exceptions to the doctrine, including when "controlling authority has since made a contrary decision of law applicable to the issue." *Id.* That is the case here.

The Fourth Circuit's published decision in *Groves*—issued after its unpublished decision in *Jackson*—is an intervening, controlling, "contrary decision of law" that establishes Jackson's prior convictions for distribution of cocaine base are still valid predicates for an enhanced offense level. The Guidelines define a "controlled substance offense" as—

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (2021 ed.). An application note states that the definition "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 app. note 1. But in *United States v. Campbell*, 22 F.4th 438, 447 (4th Cir. 2022), the Fourth Circuit—analyzing a West Virginia statute it construed to criminalize the attempted delivery of drugs—held the commentary is inconsistent with the plain text of § 4B1.2(b), and the definition of controlled substance offense does not include attempt crimes. Jackson argues—and the Fourth Circuit initially agreed—that South Carolina distribution is overbroad because it encompasses

9

attempt offenses, and *Campbell* holds an attempt is not a controlled substance offense. But *Groves* establishes that *Campbell* has no impact on the defendant's predicates because South Carolina distribution offenses are completed substantive offenses, not the type of inchoate offenses *Campbell* held are outside the scope of the career-offender Guideline.

South Carolina law makes it unlawful to distribute or possess with intent to distribute a controlled substance. S.C. Code § 44-53-370(a)(1); S.C. Code § 44-53-375(B). The South Carolina Code defines "distribute" as "to deliver (other than by administering or dispensing) a controlled substance." S.C. Code § 44-53-110(17). "Delivery," in turn, means "the actual, constructive, or attempted transfer of a controlled drug or paraphernalia whether or not there exists an agency relationship." S.C. Code § 44-53-110(10).

Similarly, the Controlled Substance Act (CSA) makes it unlawful to "manufacture, distribute, or dispense" certain drugs. 21 U.S.C. § 841(a)(1). Like the South Carolina Code, the CSA defines "distribute" as "to deliver." 21 U.S.C. § 802(11). And like South Carolina law, it then defines "deliver" as "the actual, constructive, or attempted transfer" of drugs. 21 U.S.C. § 802(8); *see also United States v. Alexander*, 693 F. App'x 192, 193 (4th Cir. 2017) (unpublished) (noting South Carolina law and the CSA have "nearly identical definitions of distribute and deliver"). That means one can commit the offense of distributing drugs by attempting to transfer drugs. *See United States v. Havis (Havis II)*, 929 F.3d 317, 319 (6th Cir. 2020) (Sutton, J., concurring in denial of en banc reconsideration). "But that does not make the crime of conviction under § 841 an *attempted* distribution." *Id.* An attempted distribution would be punished under a different part of the CSA. *See* 21 U.S.C. § 846.

When someone *distributes* drugs, even by attempting to transfer them, he is prosecuted under § 841; but when he *attempts to distribute* drugs, he is prosecuted under §§ 841 and 846.

10

*Havis II*, 929 F.3d at 319 (Sutton, J., concurring). A distribution completed by attempting to transfer drugs and an attempted distribution of drugs are "distinct offenses, one greater and one lesser, one complete and one attempted." *Id.* *Groves* held that under the CSA, *an attempt to transfer drugs is a completed distribution of drugs*. 65 F.4th at 173 ("We agree with the Sixth Circuit that an 'attempted transfer' is not an 'attempted delivery' under § 841(a)(1), and that § 841(a)(1) therefore does not criminalize the attempt offense of attempted delivery."); *see also United States v. Booker*, 994 F.3d 591, 596 (6th Cir. 2021); *United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020). "That is because construing § 841(a)(1) to criminalize an attempt offense would render § 846 superfluous." *Groves*, 65 F.4th at 173.

The same is necessarily true under the South Carolina drug statutes, which use definitions of "distribute" and "deliver" that are materially identical to those in the CSA and criminalize completed distributions separately from attempted distributions. *See* S.C. Code § 44-53-370(a)(1) ("it shall be unlawful for any person to . . . distribute, . . . attempt . . . [to] distribute, . . . or possess with the intent to . . . distribute" a controlled substance); S.C. Code § 44-53-375(B) (making it unlawful to "distribute[], . . . or otherwise . . . attempt[] . . . [to] distribute" methamphetamine or cocaine base). As in *Groves*, any argument that Jackson's distribution conviction might really be for attempted distribution would render South Carolina's separate codification of distribution and attempted distribution meaningless.

*Groves* explained that the West Virginia statute analyzed in *Campbell* is different from the CSA (and therefore different from the South Carolina scheme). 65 F.4th at 173. The West Virginia statute "does not criminalize attempt offenses separately from completed drug distribution offenses," so in *Campbell*, there was no concern about interpreting the statute in a way that rendered another portion of it superfluous. *Id.* Here, as in *Groves*, *Jackson*'s interpretation of the

11

South Carolina statute must fail because it renders South Carolina's separate codification of attempted distribution superfluous.

*Jackson*'s holding would also lead to what *Groves* recognized would be an absurd result— if distribution under the South Carolina drug statutes is overbroad because it can be completed by attempting to transfer drugs, so too would distribution under the CSA fall outside the scope of the career-offender Guideline. *See Groves*, 65 F.4th at 173. There is no daylight between the CSA and South Carolina law. They criminalize the same conduct as distribution: having possession of drugs and knowingly distributing or delivering them to another. *See Furlow*, 928 F.3d at 322 (setting forth the elements of South Carolina distribution offense); *United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005) (setting forth the elements of § 841 distribution offense). They use materially identical definitions of "distribute" and "deliver." 21 U.S.C. §§ 802(8), (11); S.C. Code §§ 44-53-110(10), (17). And they criminalize distributions and attempted distributions separately. *See* 21 U.S.C. §§ 841, 846; S.C. Code § 44-53-370(a)(1); S.C. Code § 44-53-375(B). So if distribution under South Carolina law is overbroad, then distribution under § 841 also falls outside the scope of the career-offender Guideline.

"That can't be what the guidelines' drafters had in mind." *United States v. Garth*, 965 F.3d 493, 497 (6th Cir. 2020); *Havis II*, 929 F.3d at 320 (Sutton, J., concurring) (noting it would "be bizarre if violating the primary provision of the Controlled Substances Act turned out not to be a controlled substance offense"). To conclude that distribution under § 841 is not a career-offender predicate "would be to 'hold that the Sentencing Commission failed to comply with th[e] statutory command'" that defendants receive enhanced sentences if they had been convicted of an offense under § 841 and had two or more felony convictions for offenses under § 841. *Groves*, 65 F.4th at 173 (quoting *Booker*, 994 F.3d at 596); *see United States v. Spruhan*, 989 F.3d 266, 269 (4th

Cir. 2021) (citing 28 U.S.C. § 994(h)). *Jackson*'s holding that South Carolina distribution is an attempt crime because it can be completed by an attempted transfer of drugs would lead to an irrational result that the Fourth Circuit rejected in *Groves*.[4]

More importantly, *Jackson*'s interpretation of *Campbell*—which drove its interpretation of South Carolina law—was rejected by *Groves*. *Jackson*, relying on *Campbell*, held that "because the defendant's conviction could have been based on an '*attempted* transfer,' it was an 'attempt offense' and so wasn't a categorical match for the definition of 'controlled substance offense' in the Guidelines." 2023 WL 2852624, at *5. *Groves* explained the flaw in this reasoning: *Campbell* was based on its "deduc[tion] that 'the least culpable conduct criminalized by the West Virginia statute is an *attempt to deliver* a controlled substance offense'"—not, as *Jackson* stated, on the conclusion that an *attempt to transfer* is an attempt offense. 65 F.4th at 173 (quoting *Campbell*, 22 F.4th at 442) (emphasis added). *Groves* then rejected *Jackson*'s conclusion that an "attempted transfer" is an "attempt offense," and instead held that "an 'attempted transfer' is not an 'attempted delivery'" under a definition of delivery that is identical to South Carolina and West Virginia's. *Id.* An "attempted transfer," *Groves* held, is a completed delivery and therefore a controlled substance offense under the Guidelines. *See id.*

Put simply, the Fourth Circuit's published decision in *Groves* establishes that under the definitions of "distribute" and "deliver" used in the federal and South Carolina statutes, an "attempted transfer" is not an "attempted delivery." It is a completed delivery. And a completed delivery is not an "attempted distribution." It is a completed distribution. *See Thomas*, 969 F.3d at 585 (holding Michigan drug trafficking is a controlled substance offense because "the definition of delivery used under Michigan (and federal) law—again, 'the actual, constructive, or attempted

---

[4] In response to this issue, *Jackson* directed the Government to the Sentencing Commission. 2023 WL 2852624, at *5 n.6.

13

transfer of a controlled substance'—does not include 'attempted delivery.' Instead, it includes only 'attempted transfer.' And an attempted transfer qualifies as a completed delivery." (citation omitted)). A conviction for a completed distribution is a valid career-offender predicate under the plain text of § 4B1.2(b). *Groves* is therefore intervening, contrary authority establishing that *Jackson* was wrongly decided, and Jackson's South Carolina distribution convictions are controlled substance offenses.

### D. Conclusion

An alternate upward variant sentence of 115 months' imprisonment for Jackson's offense is warranted in light of the § 3553(a) factors and this Court's statement at sentencing that it would have imposed the same sentence as an alternate variant sentence in light of the § 3553 factors and the totality of the circumstances. In the alternative, the Court should impose the same 115-month term of imprisonment since Jackson's prior South Carolina convictions for distribution of cocaine base are still valid predicates in light of *Groves*.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: s/ Winston I. Marosek
    Winston I. Marosek
    Assistant United States Attorney
    Federal I.D. No: 13189
    55 Beattie Place, Suite 700
    Greenville, South Carolina 29603
    864-282-2100
    Winston.Marosek@usdoj.gov

May 8, 2023
Greenville, South Carolina