**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4580

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

JARVIS MIKEL JACKSON,

        Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Anderson. Henry M. Herlong, Jr., Senior District Judge. (8:21−cr−00495−HMH−1)

Argued: September 27, 2024                        Decided: January 31, 2025

Before AGEE and HARRIS, Circuit Judges, and KEENAN, Senior Circuit Judge.

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Agee and Senior Judge Keenan joined.

**ARGUED:** Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Brook Bowers Andrews, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Adair F. Boroughs, United States Attorney, Andrea G. Hoffman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

Jarvis Mikel Jackson pled guilty to possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). The district court calculated an advisory Sentencing Guidelines range of 110 to 120 months' imprisonment and sentenced Jackson to a prison term of 115 months. In this appeal, Jackson raises two challenges to his sentence.

First, Jackson argues that the district court erred in calculating his Guidelines sentencing range by treating two prior South Carolina convictions for drug distribution as "controlled substance offense[s]" under the Guidelines, increasing his base offense level. *See* U.S.S.G. § 2K2.1(a)(1). According to Jackson, that determination was inconsistent with *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), which held that a violation of West Virginia's controlled substances statute did not qualify as a Guidelines controlled substance offense. We disagree. As we have explained already, South Carolina's drug distribution statute is "materially distinguishable" from the West Virginia statute at issue in *Campbell*, and a distribution conviction under South Carolina's statute *is* a controlled substance offense as defined by the Guidelines. *See United States v. Davis*, 75 F.4th 428, 443–45 (4th Cir. 2023). That precedent squarely governs here.

We do, however, agree with Jackson that the district court failed to explain its 115-month sentence or address Jackson's arguments for a lower term of imprisonment. The absence of an individualized explanation for a sentence constitutes procedural error, and we therefore vacate Jackson's sentence and remand for resentencing.

2

I.

This is the second time Jackson has appealed his sentence, and the procedural history of this case is somewhat complex. We begin with Jackson's first sentencing and appeal. We then briefly describe our decisions in *United States v. Groves*, 65 F.4th 166 (4th Cir. 2023) and *United States v. Davis*, 75 F.4th 428 (4th Cir. 2023), which issued shortly after we decided Jackson's original appeal and before his resentencing. Finally, we turn to the resentencing now at issue.

A.

1.

In 2021, Jackson pled guilty to one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The probation office prepared a presentence report ("PSR") assigning Jackson an enhanced base offense level of 26. That base offense level rested in part on Jackson's two prior felony convictions for distribution of crack cocaine under South Carolina Code § 44-53-375(B), which the PSR classified as "controlled substance offense[s]." *See* U.S.S.G. § 2K2.1(a)(1) (increasing base offense level when, *inter alia*, a defendant has at least two prior felony convictions for a "controlled substance offense"). All told, the PSR calculated an advisory Guidelines range of 110 to 120 months' imprisonment.[1]

---

[1] Jackson's total offense level and criminal history category ordinarily would lead to a Guidelines range of 110 to 137 months. That range was capped here by the 120-month statutory maximum sentence for Jackson's § 922(g)(1) conviction.

3

Jackson objected to the PSR's treatment of his South Carolina convictions as predicate controlled substance offenses, relying on our then-recent decision in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022). In *Campbell*, we held that a drug distribution conviction under West Virginia's controlled substances statute did not qualify, under the categorical approach, as a Guidelines controlled substance offense. *Id.* at 441–42, 449. The Guidelines definition of a "controlled substance offense," we explained, excluded inchoate attempt offenses from its ambit. *Id.* at 444–46; *see* U.S.S.G. § 4B1.2(b) (2021) (defining "controlled substance offense").[2] But West Virginia's statute was broader, reaching attempted as well as completed deliveries of controlled substances, and so it was not a categorical match for the Guidelines definition. *Id.* at 441–42.

Jackson argued that the same reasoning should apply to his case. Like the West Virginia statute at issue in *Campbell*, Jackson contended, South Carolina Code § 44-53-375(B) criminalizes attempted drug deliveries, taking it outside the scope of a Guidelines controlled substance offense. And without two predicate controlled substance offenses, Jackson explained, a base offense level of 26 was not warranted. Instead, Jackson's base offense level would fall to 20, leading to a Guidelines sentencing range of 63 to 78 months' imprisonment.

---

[2] The Sentencing Commission has since amended § 4B1.2(b)'s definition of "controlled substance offense" to include inchoate offenses. *See Amendments to the Sentencing Guidelines* § 4B1.2(d) (Apr. 27, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf [https://perma.cc/Y3AS-25DW]. So today, a prior conviction under West Virginia's controlled substances statute may qualify as a "controlled substance offense" for Guidelines purposes.

4

The district court overruled Jackson's objection. The court agreed with the government that Jackson's reading of South Carolina's statute was incorrect, and that in fact, a § 44-53-375(B) distribution offense does *not* include attempted distribution. That meant that *Campbell* was distinguishable, and that Jackson's South Carolina convictions remained controlled substance offenses under the Guidelines. The district court thus adopted the PSR's base offense level of 26 and Guidelines range of 110 to 120 months' imprisonment.

The district court then sentenced Jackson to a prison term of 115 months, followed by three years of supervised release. The court's discussion of its sentence was brief. The court did not "discuss the factors in 18 U.S.C. § 3553(a) or otherwise explain the basis for Jackson's sentence in any detail." *United States v. Jackson*, No. 22-4179, 2023 WL 2852624, at *2 (4th Cir. Apr. 10, 2023) ("*Jackson I*"). Instead, the court simply stated that it believed it had correctly calculated the Guidelines and found Jackson's case to be "a typical case contemplated by the [G]uidelines." S.A. 19.[3]

2.

Jackson appealed his sentence, continuing to argue that his prior South Carolina drug distribution convictions are not controlled substance offenses under the Guidelines. South Carolina's statute, Jackson explained, defines "distribute" as "deliver," S.C. Code Ann. § 44-53-110(17), and "deliver or delivery" to include the "attempted transfer" of a controlled substance, *id.* at § 44-53-110(10) (defining "'deliver' or 'delivery'" as an

---

[3] "S.A." refers to the supplemental appendix filed by the government. "J.A." refers to the joint appendix filed by both parties.

5

"actual, constructive, or attempted transfer"). It follows, he argued, that South Carolina's statute, like the West Virginia statute reviewed in *Campbell*, reaches attempted delivery of a controlled substance, broadening it beyond the Guidelines definition of controlled substance offense.

In an unpublished opinion, we agreed with Jackson. *Jackson I*, 2023 WL 2852624, at *3. Under *Campbell*, we reasoned, a state controlled substances law that sweeps in inchoate attempt offenses goes beyond the conduct covered by the Guidelines definition in § 4B1.2(b) and is therefore not a controlled substance offense under Guideline § 2K2.1(a)(1). *Id*. at *3. And South Carolina's "distribution" offense, we concluded, like West Virginia's, reaches attempted deliveries outside the scope of § 4B1.2(b). *Id.* We were not persuaded by the government's argument that under South Carolina's law an "attempted transfer" is *not* equivalent to an attempted delivery, but instead refers to a completed delivery, nor by the government's other efforts to distinguish *Campbell*. *Id.* at *3–5. Accordingly, we vacated Jackson's sentence and remanded for resentencing. *Id.* at *6.

**B.**

Almost immediately after our unpublished decision in *Jackson* – but before Jackson's resentencing – we issued two published decisions of importance here.

First, in *United States v. Groves*, 65 F.4th 166, 174 (4th Cir. 2023), we held that *Campbell* notwithstanding, a drug distribution conviction under the federal controlled substances statute, 21 U.S.C. § 841(a)(1), is a controlled substance offense under the Guidelines. We recognized that the federal statute defines "distribute" as "deliver," and

6

"deliver" to include an "attempted transfer." 65 F.4th at 172 (quoting 21 U.S.C. §§ 802(11), 802(8)). But we agreed with the government – and several other circuit courts – that "attempted transfer" as used in the federal statute means a "completed delivery rather than an attempt crime," in part because the federal law separately criminalizes attempt offenses. *Id.* (internal quotation marks omitted). That rendered the federal law "materially different" from *Campbell*'s West Virginia law, *id.* at 173, and made it a categorical match for a Guidelines controlled substance offense, *id.* at 174. In a footnote, we rejected the defendant's reliance on *Jackson I*, an unpublished decision without precedential effect. *Id.* at 173 n.4.

Next came *United States v. Davis*, 75 F.4th 428, 443 (4th Cir. 2023), in which we considered the very same South Carolina statute now at issue, § 44-53-375(B), and held that a distribution violation constitutes a controlled substance offense as defined by the Guidelines. We rejected the defendant's argument that "we [we]re bound by *Campbell* to conclude that a South Carolina Code [§] 44-53-375(B) 'distribution' offense criminalizes the attempt offense of attempted distribution" and is thus broader than the Guidelines definition. *Id.* at 444. Instead, we followed *Groves*: Like the federal statue in *Groves*, we reasoned, South Carolina law separately codifies the offense of attempted distribution; and under South Carolina law, like federal law, an "attempted transfer" of drugs is a "completed distribution," not an attempted one. *Id.* at 443. Because South Carolina's § 44-53-375(B) distribution offense does not in fact reach attempt offenses, it is "materially distinguishable" from West Virginia's law as understood in *Campbell*, and a distribution conviction under § 44-53-375(B) categorically qualifies as a Guidelines controlled

7

substance offense. *Id.* at 445. Again, we declined to follow *Jackson I* – decided, we noted, without the benefit of the *Groves* precedent – as an unpublished and nonprecedential decision. *Id.* at 444 n.15.

## C.

That brings us, finally, to Jackson's resentencing, from which the current appeal arises. About a month after our decision in *Davis*, the probation office issued a revised PSR. The PSR continued to treat Jackson's prior South Carolina convictions as controlled substance offenses, and again calculated a Guidelines range of 110 to 120 months' imprisonment. The probation office rejected Jackson's argument that it was bound by the mandate rule to give effect to *Jackson I*, reasoning that our intervening decision in *Davis* constituted a dramatic change in the law.

Before the district court, Jackson again objected, arguing that *Jackson I* prohibited the court from counting his South Carolina convictions as Guidelines "controlled substance offense[s]." He recognized that an exception to the mandate rule applies when "controlling legal authority has changed dramatically," *see United States v. Bell*, 5 F.3d 64, 67 (4th Cir. 1993), and that *Davis* marked a change from the earlier decision in *Jackson I*. Nevertheless, Jackson contended, there was no cognizable change because *Davis* is not "controlling legal authority": *Davis* is in irreconcilable conflict with *Campbell*; *Campbell*, as the earlier panel opinion, controls; and *Davis* is therefore without effect for purposes of the mandate rule, leaving the district court bound by *Jackson I*.

Without an enhanced base offense level predicated on his South Carolina convictions, Jackson again explained, his Guidelines sentencing range would fall to 63 to

8

78 months' imprisonment. Jackson urged the district court to impose a sentence within that range, either as a within-Guidelines sentence following *Jackson I* or, if the district court decided to follow *Davis*, as a downward variant sentence. In arguing that the 18 U.S.C. § 3553(a) factors supported such a sentence, Jackson relied primarily on his post-sentencing conduct while in custody: Jackson had been on excellent behavior, with no disciplinary infractions, and had been taking job skills classes and working toward a GED. Jackson also argued that his criminal history score fully accounted for his prior offenses and that he would return to a loving family home – a fiancée and four children – upon release.

The district court overruled Jackson's objection and decided to "follow the *Davis* decision," calling this an "easy" question. J.A. 22. *Davis*, the court noted – unlike *Campbell* – "actually dealt with the South Carolina statute" at issue, J.A. 22–23, making clear that a violation of § 44-53-375(B) qualifies as a controlled substance offense under the Guidelines definition. The court agreed with the government that the exception to the mandate rule for changes in the law applied, and that it should adhere to *Davis* rather than to *Jackson I*. Accordingly, it adopted the PSR advisory sentencing range of 110 to 120 months' imprisonment.

The court again sentenced Jackson to a 115-month prison term. And again, its discussion was brief. The court "incorporate[d] my comments and all of the record that was before me incorporated into this adjudication of his sentence," spelled out Jackson's offense level and criminal history category, and said it had "considered those factors under 18 U.S.C. § 3553(a)." J.A. 23. No further explanation was provided.

9

Jackson timely appealed.

## II.

On appeal, Jackson challenges the procedural reasonableness of his sentence. "In determining procedural reasonableness, this Court considers whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019). According to Jackson, the district court erred in two of these respects: by improperly calculating his Guidelines range and by failing to adequately explain its sentence. For the reasons given below, we disagree with Jackson's first claim but agree with his second, and we therefore vacate Jackson's sentence and remand for resentencing.

### A.

Jackson argues first that the district court incorrectly used his prior drug distribution convictions under South Carolina's § 44-53-375(B) to increase his Guidelines base offense level, treating them as controlled substance offenses contrary to our controlling decision in *Campbell*. We review *de novo* whether a prior conviction qualifies as a controlled substance offense under the Sentencing Guidelines, *see Davis*, 75 F.4th at 441, and we agree with the district court that Jackson's South Carolina convictions so qualify.

Because this is Jackson's second appeal of his sentence, we begin with the mandate rule. The parties do not dispute the rule's contours as they apply here. They agree that

10

under ordinary circumstances, the district court would have been required to carry out the mandate of *Jackson I* on remand, treating Jackson's South Carolina convictions as outside the Guidelines definition of a controlled substance offense and lowering Jackson's base offense level accordingly. *See Bell*, 5 F.3d at 66 (explaining that the mandate rule generally "forecloses relitigation of issues expressly or impliedly decided by the appellate court"). They also agree that an exception to the mandate rule exists when "controlling legal authority has changed dramatically," *see id.* at 67, allowing a district court to consider the merits anew and follow later precedent. And they agree that there has been a "change" in the law here – that after our unpublished decision in *Jackson I*, we changed course in *Davis*, expressly declining to follow *Jackson I* and instead holding in a published opinion that a conviction under South Carolina's § 44-53-375(B) qualifies as a Guidelines controlled substance offense.

But while there may have been a "change," Jackson argues, there was not a change in "controlling legal authority," because *Davis* is *not* "controlling." Instead, Jackson argues, because there is an irreconcilable conflict between *Davis* and the earlier-decided *Campbell*, *Campbell* continues to control. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc) ("When published panel opinions are in direct conflict on a given issue, the earliest opinion controls[.]"). The parties' dispute, in other words, is not about the mandate rule but about the status of *Davis*: According to Jackson, *Davis* is without "legal authority" – taking it outside the mandate rule exception – because it cannot be reconciled with our earlier decision in *Campbell*.

11

As the district court observed, this may be an "interesting dynamic," but it is also an "easy" question, J.A. 22, because Jackson's argument is foreclosed by *Davis* itself. We considered precisely this issue in *Davis*, in which the defendant argued – just as Jackson does here – that the West Virginia statute in *Campbell* and South Carolina's drug distribution statute are "materially indistinguishable," and that we were therefore "bound by *Campbell*" to conclude that a distribution conviction under South Carolina's § 44-53-375(B) does not qualify as a Guidelines controlled substance offense. *Davis*, 75 F.4th at 444. But we held to the contrary, finding that *Campbell* is *not* controlling when it comes to the South Carolina statute. *Id.* at 444–45. We of course recognized *Campbell*'s core holding that "an attempt offense cannot be a 'controlled substance offense,' as defined in Guidelines [§] 4B1.2(b)." *Id*. at 441–42.[4] That holding did not apply to § 44-53-375(B), however: The "South Carolina statutory scheme" is "materially distinguishable" from West Viriginia's in that it does *not* reach attempted distribution offenses, making *Campbell* likewise distinguishable. *Id.* at 445.

That holding squarely governs here. *Davis* has already decided that South Carolina's drug distribution statute is materially different from the West Virginia statute at issue in *Campbell*. The purported "conflict" between *Campbell* and *Davis* on which defendant's entire argument rests does not exist, for the reasons given by *Davis*. Jackson may disagree with *Davis*'s analysis, but *Davis* is published, binding authority. And when

---

[4] To avoid any confusion, we note again that the Sentencing Commission has since amended the Guidelines definition of controlled substance offense so that it now includes inchoate attempt offenses. *See supra* n.2.

*Davis* declined to follow our unpublished decision in *Jackson I*, *see id.* at 444 n.15, and instead ruled that a South Carolina distribution conviction under § 44-53-375(B) is a Guidelines controlled substance offense, it changed the "controlling legal authority" for purposes of the mandate rule exception, *see Bell*, 5 F.3d at 67, allowing the district court to follow our new precedent on remand.

The district court correctly relied on *Davis* and properly treated Jackson's South Carolina drug distribution convictions as predicate controlled substance offenses under the Guidelines. Accordingly, we find no procedural error in the district court's calculation of Jackson's Guidelines sentencing range.

**B.**

We turn next to Jackson's argument that the district court failed to sufficiently explain his 115-month sentence. At resentencing, Jackson argued that even if the district court overruled his *Campbell*-based objection and adopted the Guidelines range of 110 to 120 months, it should vary down to a term of somewhere between 63 and 78 months under the 18 U.S.C. § 3553(a) factors. Although the district court ably addressed Jackson's legal objection regarding the status of his South Carolina convictions, it did not address Jackson's argument for a downward variant sentence, and it did not explain the 115-month sentence it selected. We agree with Jackson that this constituted procedural error warranting a vacatur of his sentence and a remand for resentencing.

We review a district court's sentence – whether inside or outside the Guidelines range – under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "A district court is required to provide an individualized assessment based

13

on the facts before the court, and to explain adequately the sentence imposed to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Lewis*, 958 F.3d 240, 243 (4th Cir. 2020) (internal quotation marks omitted). That explanation must "provide some indication that the court considered the § 3553(a) factors and applied them to the particular defendant." *United States v. Nance*, 957 F.3d 204, 212–13 (4th Cir. 2020) (cleaned up). And of special relevance here, when a defendant – like Jackson – is being resentenced on remand after appeal, new "evidence of [the] defendant's rehabilitation since his prior sentencing" may "support a downward variance from the advisory Guidelines range." *Pepper v. United States*, 562 U.S. 476, 490 (2011).

As described above, the district court's discussion of its 115-month, within-Guidelines sentence was abbreviated, covering just a few lines of text in the transcript. Several were devoted to the court's introductory "incorporat[ion]" of "[its] comments and all of the record that was before [it]." J.A. 23. The court then walked through Jackson's Guidelines offense level, criminal history category, and advisory sentencing range; noted Jackson's inability to pay a fine; and concluded by saying, "[t]he [c]ourt has considered those factors under 18 U.S.C. § 3553(a)," without saying what "those factors" were. *Id.*

We cannot find that explanation sufficient. Without belaboring the point, we note the following: The district court did not address any individualized fact about Jackson in imposing sentence. *See United States v. Lynn*, 592 F.3d 572, 584 (4th Cir. 2010) ("[A] district court's explanation of its sentence need not be lengthy, but the court must offer *some* individualized assessment justifying the sentence imposed." (internal quotation marks omitted) (emphasis in original)). It did not identify any § 3553(a) factor it

14

considered, or explain how any § 3553(a) factor "applied" to "the particular defendant" in front of it. *Nance*, 957 F.3d at 212–13. It did not mention, engage with, or rule on Jackson's request for a downward variance. *See United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017) ("[A] [district] court must address the parties' nonfrivolous arguments in favor of a particular sentence[.]"). And it never discussed the heart of Jackson's argument for a downward variance: that his post-sentencing conduct – exemplary disciplinary record, GED classes, and the like – were evidence of rehabilitation. *See id.*; *Nance*, 957 F.3d at 212–13 (district court must indicate that it has considered arguments for a lower sentence).

We are not persuaded by the government's contrary arguments. It is true, as the government explains, that the district court accepted the parties' sentencing memoranda and heard both parties' arguments. But that minimum requirement of procedural fairness – that a district court provide a defendant with the opportunity to present argument – is distinct from the requirement that a district court explain its sentence in light of those arguments. *See Blue*, 877 F.3d at 520.

The government also suggests that the explanation here can be bolstered by the court's "specific[] incorporat[ion]" of its comments at Jackson's first sentencing. We are less certain than the government that the court intended to "incorporate" materials from the original sentencing, rather than the materials currently before it. *See* J.A. 23 ("I incorporate my comments and all of the record that was before me incorporated into this adjudication of his sentence."). But regardless, a reference back to Jackson's first sentencing adds little. As we noted in *Jackson I*, the court's explanation at that sentencing, too, was "brief," with

15

the court failing to "discuss the factors in 18 U.S.C. § 3553(a) or otherwise explain the basis for Jackson's sentence in any detail." *Jackson I*, 2023 WL 2852624, at *2. And of course, the court at that first sentencing could not have considered or addressed the evidence on which Jackson chiefly relied at his resentencing, concerning his *post-*sentencing conduct and rehabilitation.

We express no view as to the merits of Jackson's arguments for a lower sentence. We hold only that the district court committed procedural error when it failed to address those arguments and to provide an individualized explanation for the sentence it selected. Accordingly, we vacate Jackson's sentence and remand for resentencing.

### III.

For the foregoing reasons, we vacate Jackson's sentence and remand for resentencing proceedings consistent with this opinion.

*VACATED AND REMANDED*